IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LAKE ASSOCIATES, LLC**, an Oregon limited liability company, dba Warne Scope Mounts,<br><br>        Plaintiff,<br><br>   v.<br><br>**DNZ PRODUCTS LLC**, a North Carolina limited liability company,<br><br>        Defendant. | Case No.: 3:12-cv-00497-SI<br><br>**OPINION AND ORDER** |

Michael M. Ratoza and Kyle D. Sciuchetti, Bullivant Houser Bailey PC, 888 SW Fifth Avenue, Suite 300, Portland, Oregon 97204-2089. Of Attorneys for Plaintiff.

Jon P. Stride, Tonkon Torp LLP, 1600 Pioneer Tower, 888 SW Fifth Avenue, Portland, Oregon 97204-2099; David W. Sar and Clint S. Morse, Brooks, Pierce, Mclendon, Humphrey & Leonard, LLP, 2000 Renaissance Plaza, 230 N. Elm Street, Greensboro, North Carolina 27401. Of Attorneys for Defendant.

**SIMON, District Judge**.

      This patent dispute concerns the design of rifle scope mounts. Plaintiff Lake Associates, LLC, doing business as Warne Scope Mounts ("Warne" or "Plaintiff") and headquartered in Oregon, designs, manufactures, and sells the M233 rifle scope mount. The M233 employs a smooth, circular design, without the protruding "wing" that some scope mounts use to fasten the scope to the mount. Defendant DNZ Products, LLC ("DNZ" or "Defendant"), headquartered in North Carolina, also designs, manufactures, and sells rifle scope mounts. In addition, DNZ holds United States Patent No. D554,730 (the "'730 Patent"). DNZ contends that the '730 Patent

covers "wingless" rifle scope mounts, such as the M233. In this action, filed on March 16, 2012, Warne seeks a declaration that its products, including the M233, do not infringe the '730 Patent, a declaration that the '730 Patent is invalid, and an injunction prohibiting DNZ from threatening or asserting the '730 Patent against Warne. Dkt. 1. Seventeen days after Warne filed this action, DNZ filed an action in the United States District Court for the Middle District of North Carolina against Warne and Nikon, Inc.,[1] claiming patent infringement and several violations of North Carolina state law. Dkt. 18-6.

Before the court are DNZ's motion to dismiss pursuant to Fed. R. Civ. P ("Rule") 12(b)(1) for lack of subject matter jurisdiction and motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Dkt. 9. In the alternative, DNZ moves for an order transferring this case to the Middle District of North Carolina pursuant to 28 U.S.C. §§ 1404 and 1406. *Id.* The court finds that DNZ's contacts with the State of Oregon are insufficient to satisfy the "minimum contacts" test for personal jurisdiction set forth in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny. Accordingly, the court grants DNZ's motion to dismiss pursuant to Rule 12(b)(2). Because the court grants DNZ's motion to dismiss pursuant Rule 12(b)(2) for lack of personal jurisdiction, it need not reach DNZ's motion to dismiss for lack of subject matter jurisdiction. *See Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008) ("Supreme Court precedent is clear that we may choose among threshold grounds for denying audience to a case on the merits." (internal quotation marks and citation omitted)). Warne's complaint is, therefore, dismissed without prejudice.

---

[1] Nikon, Inc. distributes the M223. *See* Declaration of Charles F. Lake at ¶ 7 (Dkt. 18); Pl.'s Response in Opposition ("Pl.'s Resp.") at 3 (Dkt. 16).

## BACKGROUND

Warne is registered and headquartered in Oregon and its manufacturing facility is located in Tualatin, Oregon. Declaration of Charles F. Lake ("Lake Decl.") at ¶ 2 (Dkt. 18). Warne develops, manufactures, and distributes firearm scope mounts. *Id.* at ¶ 2; Compl. at ¶ 8. Among Warne's products is a scope mount known as the "M223." Compl. at ¶ 8.

DNZ is the family business of Timothy and Lisa Coggins. Declaration of Timothy Coggins ("Coggins Decl.") at ¶ 2 (Dkt. 11). Mr. Coggins designs scope mounts and sells them through DNZ. *Id.* at ¶¶ 2-4. Mr. Coggins designed a scope mount that employs "vertical screw fasteners within the structure of the mount itself rather than being placed in a protruding wing." *Id.* at ¶ 6. Mr. Coggins assigned his rights in this design for a "wingless" scope mount to DNZ and obtained the '730 Patent. *Id.* at ¶ 7; Dkt. 11-1.

Mr. and Mrs. Coggins are residents of North Carolina and have never visited Oregon. Coggins Decl. at ¶¶ 15-16. DNZ is organized under the laws of North Carolina and its headquarters and principal place of business are in North Carolina. *Id.* at ¶ 17. DNZ scope mounts are manufactured by Certified Machining, Inc., also a North Carolina company, with its principal place of business in that state. *Id.* at ¶ 3. DNZ has no offices, employees, or agents in Oregon. *Id.* at ¶ 17.

DNZ sells its scope mounts in Oregon through an authorized dealer, through DNZ's website, and through two independent distributors. Rich's Gun Shop, located in Donald, Oregon, is the only authorized DNZ dealer in Oregon. *Id.* at ¶ 21; Declaration of Lee Richeson ("Richeson Decl.") at ¶ 3 (Dkt. 20). Rich's Gun Shop has sold between 25 and 30 DNZ scope mounts since it became an authorized DNZ dealer in 2009. Richeson Decl. at ¶ 3, 5. In 2011, DNZ sales to Rich's Gun Shop totaled $185.85, which is approximately 0.01% of DNZ's total

sales. Coggins Decl. ¶ 21. DNZ also makes direct sales from its website. Coggins Decl. at ¶ 18. Approximately 0.6% of DNZ's "total direct sales by volume and by dollar amount were to Oregon consumers." *Id.* The total amount of sales from the DNZ website to Oregon consumers is less than $1,000. *Id.*

DNZ has a distribution arrangement with UFA Holdings, a wholesaler and distributor based in Calgary, Canada. Second Declaration of Timothy Coggins ("2nd Coggins Decl.") at ¶¶ 11-13 (Dkt. 25). UFA Holdings distributes DNZ products throughout the Pacific Northwest, including in Oregon. *Id.* at ¶ 13. DNZ is not aware of the percentage of UFA Holdings' sales of DNZ products that have occurred in Oregon. *Id.* at ¶ 12. Nonetheless, in 2011, DNZ's total sales of DNZ products to UFA Holdings for distribution to the entire Pacific Northwest amounted to less than 0.8% of DNZ's total sales. *Id.* at ¶ 13. In accordance with its arrangement with UFA Holdings, DNZ has directly shipped DNZ products to Wholesale Sports stores in Oregon. *Id.* at 14; Declaration of James Treacy at ¶¶ 3-4 (Dkt. 19); Dkt. 19-2, 19-3.

DNZ also makes sales through Adventure Bound, Inc., a manufacturing representative based in the State of Washington. 2nd Coggins Decl. at ¶ 16. Adventure Bound sells DNZ products on commission in the Northwestern United States and through Amazon.com. *Id.* Doug Bellmore, an Adventure Bound employee based in Oregon, has attempted to market DNZ products to businesses in Oregon. Declaration of Doug Bellmore at ¶¶ 2, 6-9 (Dkt. 29). As part of this work, Mr. Bellmore corresponds directly with DNZ. *Id.* at ¶ 8. Mr. Bellmore does not, however, have authority to bind DNZ in contract, and DNZ "has no control" over Mr. Bellmore's marketing efforts. 2nd Declaration of Doug Bellmore at ¶ 5 (Dkt. 32). Mr. Bellmore has "generated negligible sales of DNZ's scope mounts in Oregon." *Id.* at 6.

Warne contends that "DNZ maintains a distribution center at All Sports Supply, an approximately 65,000 sq. ft. facility in Clackamas, Oregon." Pl.'s Resp. at 5. The record, however, does not support this contention. The declaration Warne relies on, made by Sean Klaus, an independent sales representative,[2] does not state that DNZ maintains a distribution center in Oregon. It states, rather, that "DNZ . . . distributes its products *through* a distribution center maintained at All Sports Supply[.]" Declaration of Sean Klaus at ¶ 7 (Dkt. 21) (emphasis added). Thus, Mr. Klaus's declaration shows, at most, that All Sports Supply—not DNZ—maintains the distribution center. Mr. Coggins states that DNZ does not "maintain" any distribution center in Oregon. 2nd Coggins Decl. at ¶ 5. Mr. Coggins also states that DNZ "has no ownership connection" with All Sports Supply, has never contracted with All Sports Supply for distribution center services, and has never sold any products to All Sports Supply. *Id.* at ¶¶ 6-8. Warne offers no evidence to the contrary. DNZ does not dispute that Mr. Klaus may have observed DNZ products at the All Sports facility, but explains that the "products are there because they were sold by DNZ to distributors . . . and then re-sold or stocked at All Sports Supply." *Id.* at ¶ 10.

On February 2, 2010, DNZ sent a letter to Warne in Oregon, enclosing a copy of the '730 Patent and offering a licensing agreement. Coggins Decl. at ¶ 11; Dkt. 18-1. Warne replied by letter on May 19, 2010, stating that Warne's products did not infringe the '730 Patent and declining a licensing agreement. Lake Decl. at ¶ 4; Dkt. 18-2. DNZ sent an additional letter offering to license the '730 Patent to Warne on May 21, 2010. Dkt. 18-3.

On March 2, 2012, DNZ's counsel sent a letter to Warne's counsel in Texas demanding that Warne "cease and desist the infringement of DNZ's intellectual property rights" and

---

[2] Mr. Klaus is an employee of Tim Bailey & Associates. He states that as "a manufacturer's representative with Tim Bailey & Associates, I work with Warne Scope Mounts providing sales representation for Warne Scope Mounts' products." Declaration of Sean Klaus at ¶ 2, 5. Mr. Klaus does not represent DNZ. 2nd Coggins Decl. at ¶ 4.

cautioning that "any continued manufacture, import, use or sale of products utilizing DNZ designs and/or the '730 Patent's design, including . . . the M223 product, will be considered intentional and willful infringement." Dkt. 18-5. Following this letter, Warne became "concerned [about] imminent litigation by DNZ." Lake Decl. at ¶ 9. Warne filed this action on March 19, 2012. Dkt. 1. DNZ filed suit against Warne in the Middle District of North Carolina, Civil Action No. 12-326, on April 2, 2012. Dkt. 18-6.

## STANDARDS

The "issue of personal jurisdiction in a declaratory action for non-infringement is intimately related to patent law and thus governed by Federal Circuit law regarding due process." *Breckenridge Pharm., Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (internal quotation marks and citation omitted). Because the parties have not conducted discovery, Warne need "only to make a prima facie showing that the defendants were subject to personal jurisdiction." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) (internal quotation marks and citation omitted). For purposes of a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court construes the pleadings and affidavits in the light most favorable to Warne. *Graphic Controls Corp. v. Utah Med. Products, Inc.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

## DISCUSSION

To assert personal jurisdiction over an out-of-state defendant, the court must resolve two inquiries: "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997). In this case, these inquiries merge because Oregon's long-arm statute extends jurisdiction "to the outer limits of due process." *State ex rel.*

*Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384 (1982); *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) ("because California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process"). The court, therefore, addresses a single question: whether the Due Process Clause of the Fifth Amendment permits this court to assert jurisdiction over DNZ.

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." [3] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotation marks and citation omitted). To satisfy this due process protection, the plaintiff must show that the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the "minimum contacts" test, "a defendant may be subject to either specific jurisdiction or general jurisdiction." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). A court has general personal jurisdiction over an out-of-state defendant when that defendant has "continuous and systematic general business

---

[3] The Federal Circuit has noted that because federal courts' subject matter jurisdiction to hear patent disputes is based on federal question jurisdiction, 28 U.S.C. § 1331, rather than diversity jurisdiction, 28 U.S.C. § 1332, the Due Process Clause of the Fifth Amendment, rather than the Due Process Clause of the Fourteenth Amendment, governs the courts' assertion of personal jurisdiction. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002); *see generally Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir. 1975). *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny were decided under the Due Process Clause of the Fourteenth Amendment. *See id.* at 311 (the question "for decision [is] whether, within the limitations of the due process clause of the Fourteenth Amendment, appellant, a Delaware corporation, has by its activities in the State of Washington rendered itself amenable to proceedings in the courts of that state"). Nonetheless, the Federal Circuit applies the standards developed in *Int'l Shoe* and its progeny "to Fifth Amendment due process cases arising under the federal patent laws." *Deprenyl Animal Health*, 297 F.3d at 1350.

Page 7 – OPINION AND ORDER

contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). A court has specific personal jurisdiction where "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal quotation marks and citations omitted). Thus, in "contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks and citation omitted).

Warne argues that DNZ's contacts with the State of Oregon provide this court with both general and specific personal jurisdiction. Pl.'s Resp. at 13-18. For the reasons described below, the court finds that Warne has failed to present a prima facie case that the court may assert either general or specific personal jurisdiction over DNZ.

**A.    General Personal Jurisdiction**

A court may not assert general personal jurisdiction over an out-of-state defendant unless the defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A*, 131 S. Ct. at 2851 (quoting *Int'l Shoe*, 326 U.S. at 317). Neither the United States Supreme Court nor the Federal Circuit "has outlined a specific test to follow when analyzing whether a defendant's activities within a forum are continuous and systematic." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (internal quotation marks, alterations, and citation omitted). Instead, the "court must look at the facts of each case to make such a determination." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

The facts of this case do not establish that DNZ has continuous and systematic contacts with Oregon. DNZ's principal contacts with Oregon come from sales made to Oregonians through a single authorized dealer, two distributors, and DNZ's website. In 2011, those sales amounted to approximately two percent or less of DNZ's total sales,[4] which is too little "to reflect the substantial and continuous presence in the state necessary to support general jurisdiction." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (finding that sales into the forum state amounting to two percent of defendant's total sales did not support assertion of general jurisdiction). It makes no difference that DNZ's sales to Oregonians may have been ongoing for several years. In *Helicopteros*, the Supreme Court found that "mere purchases, *even if occurring at regular intervals*, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." 466 U.S. at 418 (emphasis added). Moreover, except for the direct sales from DNZ to Oregon residents from DNZ's website,[5] most of DNZ's Oregon sales are the result of sales through independent intermediaries. In *Goodyear Dunlop Tires Operations*, the Supreme Court found that an out-of-state defendant's sale of products to forum residents through intermediaries

---

[4] According to Timothy Coggins's declarations, website sales into Oregon accounted for 0.6% of DNZ's total sales, Rich's Gun Shop accounted for 0.01%, and UFA Holdings accounted for less than 1%. Coggins Decl. at ¶¶ 18, 20-21; 2nd Coggins Decl. at ¶ 15. Doug Bellmore, Adventure Bound's Oregon representative, stated that he had "generated negligible sales of DNZ's scope mounts in Oregon." 2nd Declaration of Doug Bellmore at ¶ 5. In fact, although Mr. Bellmore described marketing DNZ products in Oregon, he did not claim to have made any sales at all in Oregon. Thus, in aggregate, DNZ's sales in Oregon amount to less than 2% of DNZ's total sales.

[5] The maintenance of a website is not itself sufficient to confer general personal jurisdiction on this court. *See Campbell Pet Co.*, 542 F.3d at 884 ("the defendants' website does not establish general jurisdiction in Washington, because it was not specifically directed at Washington, 'but instead is available to all customers throughout the country who have access to the Internet.'" (quoting *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005))).

did not confer general jurisdiction on a court. 131 S. Ct. at 2856-57 (holding that sales of the defendant's tires in the forum state through intermediaries "fell far short" of constituting continuous and systematics contacts). In short, DNZ's sales into Oregon are too small and too attenuated to constitute continuous and systematic contacts sufficient to confer on this court general personal jurisdiction.

Warne also argues that DNZ's authorized dealer agreement with Rich's Gun Shop and DNZ's distributor agreements with UFA Holdings and Adventure Bound themselves constitute continuous and systematic contacts with Oregon. Pl.'s Resp. at 14. Federal Circuit law, however, makes clear that contracts between an out-of-state defendant and third-parties located or doing business in the forum state do not confer general personal jurisdiction. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("doing business with a company that does business in Minnesota is not the same as doing business in Minnesota"); *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009) (the defendant's collaboration agreement with a forum-state company did not create continuous and systematic contacts between the defendant and the forum state).

Aside from the company's limited sales into Oregon and its dealership and distribution agreements, DNZ has no other general business contacts with Oregon. It does not own or lease property here, directly employ Oregon residents, or have a registered agent for service of process. DNZ's owners, Timothy and Lisa Coggins, have never visited Oregon. DNZ, therefore, does not have the sort of substantial contacts with Oregon that would make it "essentially at home" here. *See Autogenomics*, 566 F.3d at 1018 (finding no general personal jurisdiction in part because the defendant "has no actual physical presence or license to do business in" the forum state); *Campbell Pet Co.*, 542 F.3d at 882-884 (no general personal jurisdiction over defendant

where defendant's sales to forum state amounted to two percent of total sales, but defendant had no office and was not registered in forum state). Warne has not presented a prima facie case that this court has general personal jurisdiction over DNZ.

**B.     Specific Personal Jurisdiction**

Even where a defendant is not subject to general personal jurisdiction, "a district court may nonetheless exercise specific personal jurisdiction over the defendant subject to a three part test." *Autogenomics*, 566 F.3d at 1018. The three factors are: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)). "The plaintiff has the burden of proving parts one and two of the test, and then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Grober v. Mako Products, Inc.*, ___ F.3d ___, No. 2010-1519, 2012 WL 3065278 *8 (Fed. Cir. July 30, 2012).

In actions for a declaratory judgment of non-infringement or invalidity of patents, like this case, the Federal Circuit has articulated the quality and quantum of evidence necessary to satisfy the three-part test for specific personal jurisdiction. The sending of an "infringement letter"—that is, a letter sent from the defendant-patentee to the plaintiff alleging the infringement of a patent—without more, "is insufficient to satisfy the requirements of due process[.]" *Inamed Corp.*, 249 F.3d at 1361. This is because a "patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *Red Wing Shoe*, 148 F.3d at 1361. To establish the existence of specific

Page 11 – OPINION AND ORDER

personal jurisdiction, therefore, "there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003)

In *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008), the Federal Circuit placed strict limitations on what "other activities" may be used to support the assertion of specific personal jurisdiction in a declaratory judgment action relating to patents. A "defendant[-]patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability." *Id.* at 1336. Accordingly, the Federal Circuit held "that such sales do not constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee." *Id.* Instead, "only enforcement or defense efforts related to the patent . . . are to be considered for establishing specific personal jurisdiction[.]" *Autogenomics*, 566 F.3d at 1020. Examples of "other activities" that meet the standard in *Avocent* "include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Avocent*, 552 F.3d at 1334.

In light of this precisely articulated standard, Warne has failed to present a prima facie case that this court may assert specific personal jurisdiction over DNZ. DNZ sent infringement letters to Warne in Oregon, but those letters alone are insufficient to establish specific personal jurisdiction under the law of the Federal Circuit. Warne must also show that DNZ has engaged in other activities related to the enforcement or defense of the '730 Patent. Warne has not done so.

Warne does not cite and the court has not found any evidence that DNZ has entered into licensing agreements in Oregon that are either exclusive or impose enforcement obligations on the licensee. *See, e.g.,* 2nd Coggins Decl. at ¶ 17 (Adventure Bound does not have an exclusive license). Nor has the court found any evidence, other than sending infringement letters to Warne, that DNZ has engaged in any activities related to enforcement or defense of the '730 Patent in Oregon. Warne contends that DNZ's sale of products through Rich's Gun Shop and its distribution arrangements with UFA Holdings and Adventure Bound amount to "other activities." Pl.'s Resp. at 17. As explained above, however, these are the same sorts of activities that the Federal Circuit held in *Avocent* to be irrelevant to the specific personal jurisdiction analysis in a declaratory judgment action. DNZ's sales into Oregon and its distribution agreements are not related to the enforcement or defense of the '730 Patent.

At oral argument, Warne advanced an additional argument. Warne argued that DNZ engaged in activities in Oregon related to the enforcement or defense of the '730 Patent because DNZ's products sold in Oregon are "marked" to show that they are protected by the '730 Patent. Generally, the court does "not consider issues raised for the first time during oral argument, unless failure to do so would result in manifest injustice and the [opposing party] would not be prejudiced by such consideration." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (internal quotation marks and citation omitted). DNZ did not have an opportunity to prepare a response to this argument and, therefore, it would prejudice DNZ for the court to consider it now. In any event, Warne conceded at oral argument that it could not cite case law supporting this argument and the court is aware of none. Moreover, merely marking a product "patent protected" does not appear to be the sort of enforcement or defense activity discussed by the Federal Circuit. Rather, such marking only signals the existence of a patent. Thus, Warne has

Page 13 – OPINION AND ORDER

failed to show that DNZ has engaged in any "other activities"—besides sending infringement letters to Warne—related to the enforcement or defense of the '730 Patent in Oregon. Warne, therefore, has failed to present a prima facie case that this court may assert specific personal jurisdiction over DNZ.

## CONCLUSION

Defendant's motion to dismiss for lack of jurisdiction, Dkt. 9, is **GRANTED**. Plaintiff's complaint, Dkt. 1, is **DISMISSED** without prejudice for lack of personal jurisdiction.

IT IS SO ORDERED.

Dated this 20th day of August, 2012.

/s/ Michael H. Simon
_____
Michael H. Simon
United States District Judge